IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| CINCINNATI INSURANCE CO., | ) | |
| | ) | |
| Appellant, | ) | Civil Action No.: 5:13cv063 |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL D. CHIDESTER, | ) | By: Hon. Michael F. Urbanski |
| | ) | United States District Judge |
| Appellee. | ) | |

**MEMORANDUM OPINION**

In this bankruptcy appeal, appellant Cincinnati Insurance Company ("Cincinnati Insurance") appeals the bankruptcy court's denial of its summary judgment motion on the non-dischargeability of the debt appellee Michael D. Chidester ("Chidester") owes it. Particularly, Cincinnati Insurance argues that the facts establish, as a matter of law, that the debt arose from debtor's defalcation within the meaning of 11 U.S.C. § 523(a)(4) ("Section 523(a)(4)") while acting in a fiduciary capacity, and as such, the bankruptcy court erred in denying its summary judgment motion. For the reasons stated below, the court affirms in part and vacates in part the bankruptcy court's opinion and order, remanding for consideration of the facts under the Supreme Court's ruling in Bullock v. BankChampaign, N.A., ---- U.S. ----, 133 S. Ct. 1754 (2013).

**I.**

The facts as presented in the motion are largely uncontested. On December 2, 2003, the Albemarle County Circuit Court (the "Circuit Court") appointed Chidester as the permanent guardian and conservator of the estate of Billy Lynwood Clemmer ("Clemmer"). Chidester was

required to post a $5,000 bond without surety in connection with his appointment as guardian, and a $200,000 bond with surety in connection with his appointment as conservator. On December 10, 2003, the bond was filed with the Circuit Court.

As a conservator and guardian, Chidester was subject to certain statutory duties set forth in Title 64 of the Virginia Code. Specifically relevant to this controversy is Va. Code § 64.2-1305, requiring both guardians and conservators to file a statement of accounts with the Commissioner of Accounts. Chidester complied with these duties by filing an accounting on September 27, 2005, and again on June 23, 2006. After the filing of the second accounting, Chidester was granted permission by the Circuit Court to sell real estate owned by Clemmer, the sale of which generated proceeds in the amount of $176,638.52. On April 23, 2007, Clemmer died. Upon Clemmer's death, Chidester was required to file a final accounting, but did not do so.[1] Once the Commissioner of Accounts reported to the Circuit Court that no final accounting had been filed by Chidester, the Circuit Court issued a summons for Chidester to appear and show cause why his bond should not be forfeited. The hearing was attended by the Commissioner of Accounts, the attorney for the executor of Clemmer's estate, and the attorney for Cincinnati Insurance. Chidester did not appear at the show cause hearing. Thus, on January 23, 2009, the Circuit Court issued an order forfeiting Chidester's bond and ordering Cincinnati Insurance to pay Clemmer's estate the bond's $200,000 value.

After Cincinnati Insurance paid Clemmer's estate, it filed a complaint against Chidester alleging indemnification under the bond agreement and breach of contract.[2] Chidester failed to

---

[1] As the bankruptcy court noted in its opinion, to date Chidester has failed to file an accounting reporting the disposition of the proceeds of the sale of Clemmer's real estate.

[2] The bond application contained an indemnification clause with the following terms:

  [Chidester] agree[s] to completely indemnify [Cincinnati Insurance] from and against any liability, loss, cost, attorneys' fees, and expenses whatsoever, including the enforcement of this agreement,

2

respond to the complaint. As a result, on October 19, 2010, Cincinnati Insurance filed a motion for entry of default judgment. The Circuit Court conducted a hearing at which Cincinnati Insurance presented evidence pertaining to Chidester's failure to respond to the complaint and the appropriate amount of damages. A default judgment was entered in favor of Cincinnati Insurance in the amount of $200,000 plus 6% interest, as well as fees and costs totaling $14,244.94. It is this bond debt, reduced to default judgment, that Cincinnati Insurance alleges is non-dischargeable in bankruptcy under Section 523(a)(4).

On November 8, 2011, Chidester filed his Chapter 7 petition in the bankruptcy court. Four months later, Cincinnati Insurance initiated an adversary proceeding seeking to have Chidester's bond debt declared non-dischargeable under Section 523(a)(4). Cincinnati Insurance filed a motion for summary judgment, arguing that based on the facts and the judgment of the Circuit Court, Chidester committed defalcation, and that the debt was non-dischargeable. On March 1, 2013, the bankruptcy court denied summary judgment. In so doing, the bankruptcy court concluded that it was "premature to determine if a genuine issue exists as to a material fact" because the definition of "defalcation" was in flux amongst the circuits and the issue was before the Supreme Court. <u>Cincinnati Ins. Co. v. Chidester (In re Chidester)</u>, Ch. 7 Case No. 11-51591, Adv. No. 12-05008, slip op. at 9 (Bankr. W.D. Va. August 31, 2012) (Dkt. No. 28). Additionally, the bankruptcy court concluded that it would not give the Circuit Court judgment preclusive effect given the fact that the Circuit Court proceedings failed to address how Chidester "may have misused or misappropriated the funds." <u>Id.</u> at 11-12.

---

    which [Cincinnati Insurance] shall at any time sustain as surety or by reason of having been surety on this bond or any other bond issued for [Chidester].

(R. 283.)

On April 4, 2013, Cincinnati Insurance filed a Motion for Leave to Appeal, asking this court to exercise its discretion pursuant to 28 U.S.C. § 158(a)(3), and grant it leave to file an interlocutory appeal. On May 9, 2013, the court entered an order granting defendant's motion. The appeal was filed on June 14, 2013, and the court heard oral argument on August 15, 2013. Having considered the relevant case law, the briefs, and the argument of counsel, the court affirms in part and vacates the bankruptcy court's opinion and order in part, remanding for consideration of the facts under the Supreme Court's ruling in Bullock v. BankChampaign, N.A., ---- U.S. ----, 133 S. Ct. 1754 (2013).

## II.

This court has jurisdiction pursuant to 28 U.S.C. § 158(a)(3). On review, the bankruptcy judge's factual findings are not to be disturbed unless clearly erroneous, while legal determinations are to be reviewed de novo. See Fed. R. Bankr. P. 8013; IRS v. White (In re White), 487 F.3d 199, 204 (4th Cir. 2007). Summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth., 597 F.3d 570, 576 (4th Cir. 2010).

## III.

Cincinnati Insurance maintains that the bankruptcy court erred in denying its motion for summary judgment because the facts establish that Chidester's actions taken in his fiduciary capacity amount to defalcation and thus, the bond debt is non-dischargeable under Section 523(a)(4).

Section 523 of the Bankruptcy Code codifies exceptions to discharge, stating in pertinent part:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
>
> > (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;

11 U.S.C. § 523(a)(4). In the Fourth Circuit, a creditor claiming a debt is non-dischargeable due to a debtor's defalcation has to prove: (1) the debtor was acting in a fiduciary capacity when the debt arose; and (2) that the debt arose from the debtor's defalcation. Kubota Tractor Corp. v. Strack (In re Strack), 524 F.3d 493, 497 (4th Cir. 2008). At the time the bankruptcy court issued its opinion and order, the Fourth Circuit did not require a showing of recklessness or intentional misconduct in order for a court to find that debtor had defalcated, and the related debt was non-dischargeable. In re Uwimana, 274 F.3d 806, 811 (4th Cir. 2001), abrogated by Bullock, 133 S. Ct. 1754 (2013).

On appeal, the parties do not dispute that the debtor was acting within his fiduciary capacity when this debt arose. Thus, the question is whether or not the debt arose from debtor's defalcation. While the Bankruptcy Code itself does not define defalcation, the Supreme Court recently had the opportunity to do so in Bullock. 133 S. Ct. 1754. In Bullock, the Supreme Court held that defalcation "includes a culpable state of mind requirement . . . [or] one involving knowledge of, or gross recklessness in respect to, the improper nature of the relevant fiduciary behavior." Id. In reaching this conclusion, the Court explained:

> [t]hus, where the conduct at issue does not involve bad faith, moral turpitude, or other immoral conduct, the term requires an intentional wrong. We include as intentional not only conduct that the fiduciary knows is improper but also reckless conduct of the kind that the criminal law often treats as the equivalent. Thus, we include reckless conduct of the kind set forth in the Model Penal Code. Where actual knowledge of wrongdoing is lacking, we consider conduct as equivalent if

5

the fiduciary "consciously disregards" (or is willfully blind to) "a substantial and unjustifiable risk" that his conduct will turn out to violate a fiduciary duty. That risk "must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation.

133 S.Ct. at 1759 (internal citations omitted). In so holding, the Court abrogated In re Uwimana, in which the Fourth Circuit had concluded that negligence or an innocent mistake could constitute defalcation.³ Thus, given the holding of the Supreme Court in Bullock, Cincinnati Insurance must make a showing of bad faith or gross recklessness, i.e., that Chidester consciously disregarded a substantial and unjustifiable risk that his conduct violated a fiduciary duty, before the court may find that Chidester committed defalcation, and the bond debt is non-dischargeable.

Given the standard in the Fourth Circuit at the time the bankruptcy court made its decision, the record as it pertains to Chidester's state of mind at the time he failed to file an accounting and failed to remit the funds to the estate is incomplete.⁴ Thus, in light of the heightened standard announced in Bullock, it is appropriate to allow the parties an opportunity to present evidence, and for the bankruptcy court, familiar with this case as a whole, to handle the fact-intensive question of whether Chidester's actions were taken in bad faith or were grossly reckless. See, e.g., Q Int'l Courier Inc. v. Smoak, 441 F.3d 214 (4th Cir. 2006) (declining to

---

³ In In re Uwimana, the Fourth Circuit did not require a finding of recklessness or ill-intent in order for a debt to be exempted under Section 523(a)(4), noting that defalcation is merely "the failure to meet an obligation or a non-fraudulent default." 274 F.3d at 811. For a debt to be deemed non-dischargeable, the defalcation does not need to rise to the level of fraud, embezzlement, or misappropriation. Id. (citing Pahlavi v. Ansari (In re Ansari), 113 F.3d 17, 20 (4th Cir. 1997)). Indeed, "even an innocent mistake, which results in misappropriation or failure to account" could be defalcation. Id.

⁴ In the adversary proceeding, counsel for Cincinnati Insurance filed a document titled "Separate Statement of Undisputed Facts." (R. 98-102.) None of the facts in this document relate to Chidester's state of mind. Similarly, a review of the summary judgment hearing transcript indicates that the parties did not present argument or facts relating to Chidester's state of mind at the time he failed to provide an accounting and failed to remit the funds to Clemmer's estate. Rather, the hearing focused on whether a failure to account amounted to defalcation per se, with Chidester briefly offering reasons for his failure to account and failure to remit funds.

determine whether defendant's current claims would otherwise be precluded under Virginia law, and instead remanding "the case to the district court to decide these issues in the first instance"). Accordingly, the court vacates the bankruptcy opinion and order in part and remands to give the bankruptcy court the opportunity to decide this issue in the first instance in light of the holding in Bullock.

### IV.

Cincinnati Insurance argues in the alternative that the default judgment entered in the Circuit Court should be given a collateral estoppel effect as to Chidester's alleged defalcation. The bankruptcy court held that the issue of defalcation in an action for breach of contract and indemnity was not actually litigated, and thus, refused to give the default judgment preclusive effect. The court agrees and affirms the holding of the bankruptcy court in this regard. Federal courts must give "full faith and credit" to judgments of state courts. 28 U.S.C. § 1738. Therefore, as a matter of full faith and credit, the federal court must apply the state's law of collateral estoppel preclusion. Pahlavi v. Ansari (In re Ansari), 113 F.3d 17, 19 (4th Cir. 1997). These principles apply in Section 523(a) proceedings. Grogan v. Garner, 498 U.S. 279, 284-85 (1991).

The Virginia Supreme Court has held that:

> [f]or [collateral estoppel] to apply, the parties to the two proceedings, or their privies, must be the same; the factual issue sought to be litigated actually must have been litigated in the prior action and must have been essential to the prior judgment; and the prior action must have resulted in a valid, final judgment against the party sought to be precluded in the present action. Additionally, collateral estoppel in Virginia requires mutuality. . . .

Transdulles Center, Inc. v. Sharma, 252 Va. 20, 472 S.E.2d 274, 275 (1996) (internal citations omitted). Thus, for collateral estoppel to apply there must be identical parties, a valid final judgment, mutuality, and the factual question at issue must have been "essential" and "actually

7

litigated." [5] In re Ansari, 113 F.3d at 19. In this case, the parties dispute whether the issue of defalcation was actually litigated. The Circuit Court held that Chidester "failed to file a final accounting and has failed to account for and turn over the assets . . . of the estate of Billy Lynwood Clemmer," and thus forfeited Cincinnati Insurance's bond on this basis. (R. 293.) Given the definition of defalcation as set forth in Bullock, the court concludes that the question of whether Chidester defalcated while acting in a fiduciary capacity was not actually litigated in this breach of contract and indemnity suit, as the Circuit Court was not required to resolve the question of defendant's state of mind or find that defendant acted in a grossly reckless manner in order to enter judgment.[6] See, e.g., In re Kurtz, CV 12-07175 DMG, 2013 WL 3467105, at *4 (C.D. Cal. July 10, 2013) (applying collateral estoppel preclusion when an arbitrator's award made a finding that debtor's breach of fiduciary duty was willful, malicious and oppressive); In re Davies, 1:10–bk–23817–GM, 2013 WL 2403315, at *5 (Bankr. C.D. Cal. May 31, 2013) (holding that a conviction for conversion of partnership assets did not necessarily decide that defendant committed defalcation while acting in a fiduciary capacity as there was no

---

[5] There are circumstances where a default judgment can be regarded as "actual litigation" of "essential" issues in a prior action for collateral estoppel purposes. See In re Ansari, 113 F.3d at 19. However, because it is clear that the scienter element of defalcation was not actually litigated, those circumstances do not exist in this case.

[6] Cincinnati Insurance urges the court to adopt the position taken by the Eastern District of Virginia in In re Ault, 2012 WL 1081083, *2 n.1 (E.D. Va. March 26, 2012), and hold that Chidester cannot re-litigate issues already determined by a state court, having failed to present those arguments to the state court and having failed to avail himself of the state court's appeal process. Reliance on this pre-Bullock case is misplaced. The state court judgment at issue in In re Ault established that debtor misappropriated funds while acting in a fiduciary capacity. Based on pre-Bullock case law, the court determined that, based on those facts, the debtor had defalcated within the meaning of Section 523(a)(4), and the state court judgment should be given preclusive effect. After holding that the judgment itself established that debtor defalcated while acting in a fiduciary capacity, the In re Ault court rejected counsel's attempts to attack the validity of the state court judgment, noting that if the debtor took issue with the facts as the state court found them, he should have availed himself of the state court appeal process. The posture of the case before the court is markedly different, primarily due to the change in prevailing law. Based on Bullock, this court cannot, based on the record from the state court proceedings, conclude that the issue of Chidester's intent, a requirement for a showing of defalcation, was essential to the state court claim or was actually litigated. Nor can the court conclude that, based on the facts presented in that case, Chidester was grossly reckless. Thus, here, Chidester does not attack the state judgment itself, as the debtor in In re Ault attempted to do; rather, given the heightened standard set forth by the Supreme Court in Bullock, Chidester argues that the state court did not actually litigate issues essential to the question of whether Chidester committed defalcation in his fiduciary capacity.

determination that defendant acted in bad faith or was grossly reckless). Thus, the court affirms the bankruptcy court in this regard.

## V.

In conclusion, the court vacates the order of the bankruptcy court in part and remands based on the holding in Bullock, for a determination if, as a matter of law, the actions taken by Chidester amounted to defalcation with the requisite scienter requirement. Particularly, the bankruptcy court should determine whether Chidester's actions were taken in bad faith or amounted to gross recklessness, which, at a minimum, involved the conscious disregard of "'a substantial and unjustifiable risk' that his conduct [would] turn out to violate a fiduciary duty." Bullock, 133 S.Ct. at 1759-60 (quoting Model Penal Code § 2.02(2)(c) (1985)). The court affirms the bankruptcy court's holding that the Circuit Court's default judgment does not have a preclusive effect on the issue in this case. An appropriate Order shall be entered this day.

The Clerk is directed to send a copy of this Memorandum Opinion to all counsel of record.

Entered: August 27, 2013

/s/ Michael F. Urbanski

Michael F. Urbanski
United States District Judge